UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CROWN CASTLE FIBER LLC,

                Plaintiff,

    v.

CITY OF ROCHESTER, NEW YORK,
MALIK D. EVANS, *as the Mayor of the
City of Rochester (in his official capacity)*,
RICHARD PERRIN, *as the Commissioner,
City of Rochester Department of
Environmental Services (in his official
capacity)*, ROCHESTER CITY
COUNCIL,[1]

                Defendants.

_____

**DECISION AND ORDER**

6:20-CV-06866 EAW

## **INTRODUCTION**

      Plaintiff Crown Castle Fiber LLC ("Plaintiff" or "Crown Castle") seeks declaratory and injunctive relief against defendants the City of Rochester ("the City"), City of Rochester Mayor Malik D. Evans in his official capacity, City of Rochester Department of Environmental Services Commissioner Richard Perrin in his official capacity, and the Rochester City Council (collectively "Defendants") related to the City of Rochester Telecommunications Code (the "Telecom Code"). (Dkt. 1). More particularly, Plaintiff

_____

[1]     Malik D. Evans became Mayor of the City of Rochester and Richard Perrin became Commissioner of the City of Rochester Department of Environmental Services in January of 2022. They have been automatically substituted as defendants pursuant to Federal Rule of Civil Procedure 25(d). The Clerk of Court is directed to amend the caption of this case to reflect the same.

asserts the following claims: (1) violations of Section 253 of the Federal Communications Act of 1934, 47 U.S.C. § 253 ("Section 253") and of Section 332 of the Federal Communications Act of 1934, 47 U.S.C. § 332 ("Section 332"); (2) violations of Section 7803 of the New York Civil Practice Law & Rules ("CPLR 7803"); (3) violation of the dormant Commerce Clause, U.S. Const. Art. I, § 8, Cl. 3; (4) violation of the Takings Clause, U.S. Const. Amend. V; and (5) violation of the First Amendment right to freedom of speech, U.S. Const. Amend. I.  (*Id*.).

Pending before the Court are Plaintiff's motion for partial summary judgment (Dkt. 26) and Defendants' cross-motion for summary judgment (Dkt. 30).  For the reasons discussed below, the Court denies in their entireties both parties' motions.

**BACKGROUND**

The following facts are taken from the parties' respective statements of undisputed facts and responses thereto (Dkt. 26-2; Dkt. 30-7; Dkt. 33-1), as well as the exhibits submitted by the parties.  The Court has noted relevant factual disputes.

## I.   **The Court's Cellco Decision**

As an initial matter, contemporaneously with entry of this Decision and Order, the Court has entered a Decision and Order in the related case of *Cellco Partnership v. City of Rochester*, No. 6:19-cv-006583 (the "Cellco Case").  *See id*., Dkt. 65 (W.D.N.Y. August 22, 2022) (the "Cellco Decision").  Like Crown Castle, the plaintiff in the Cellco Case has also asserted challenges to the Telecom Code under Section 253.   In the Cellco Decision, the Court denied the parties' competing motions for summary judgment, making numerous findings that are relevant here.  Those findings include: (1) the Court has the authority to

hear a cause of action for a violation of Section 253; (2) the Federal Communications Commission's ("FCC") declaratory ruling and report and order entitled *In the Matter of Accelerating Wireless Broadband Deployment by Removing Barriers to Infrastructure Inv.*, 33 F.C.C. Rcd. 9088 (2018) (the "Small Cell Order") applies to challenges to the Telecom Code brought under the Federal Communications Act, including challenges to the City's fees for linear underground and aerial telecommunications facilities; (3) pursuant to the Small Cell Order, the City bears the burden of demonstrating that its fees are cost-based; and (4) issues of fact exist regarding whether the fees contained in the Telecom Code are a reasonable approximation of the City's costs.

The Cellco Decision is incorporated by reference into the instant Decision and Order, and familiarity with its contents, reasoning, and conclusions is assumed. The Court accordingly will not repeat the factual background set forth therein regarding small cell infrastructure, the adoption of the Small Cell Order, the City's *Rules and Regulations for Work in the Right-of-Way, City of Rochester, New York* (the "ROW Rules"), and the adoption of the Telecom Code.

## II.    Crown Castle's Activities in the City's Right-of-Way ("ROW") and Payment of Fees under the Telecom Code

Crown Castle is a New York limited liability company that "builds and installs telecommunications facilities that provide transport and backhaul telecommunications services to other carriers, including providers offering personal wireless services, throughout the State of New York." (Dkt. 26-2 at ¶ 1; Dkt. 30-7 at ¶ 1). Crown Castle

submitted a registration application and $1,000 payment to the City on September 28, 2019, pursuant to the Telecom Code.  (Dkt. 26-2 at ¶ 18; Dkt. 30-7 at ¶ 18).

On December 18, 2019, Crown Castle paid the City a $1,430 annual maintenance fee.  (Dkt. 26-2 at ¶ 19; Dkt. 30-7 at ¶ 19).  On December 23, 2019, the City issued Crown Castle an "Annual Maintenance/Annual Utility Maintenance Permit."  (Dkt. 26-2 at ¶ 20; Dkt. 30-7 at ¶ 20).  Crown Castle and the City executed a master license agreement ("MLA") in May 2020.  (Dkt. 26-2 at ¶ 24; Dkt. 30-7 at ¶ 24).  Crown Castle received an invoice from the City for "Telecom Fees (ROW) 2019" in the amount of $158,830.91. (Dkt. 26-2 at ¶ 37; Dkt. 30-7 at ¶ 37).

## PROCEDURAL HISTORY

Plaintiff commenced this action by filing its complaint and attached exhibits on October 20, 2020.  (Dkt. 1; Dkt. 3).  Defendants answered the complaint on November 14, 2020.  (Dkt. 12).

Factual discovery closed on July 1, 2021.  (Dkt. 24).  Expert discovery closed on October 22, 2021.  (*Id*.).

Plaintiff filed its motion for summary judgment on November 1, 2021.  (Dkt. 26). Defendants filed their response and cross-motion for summary judgment on December 6, 2021.  (Dkt. 30).  Plaintiff filed a reply in further support of its motion and response to Defendants' cross-motion on January 3, 2022.  (Dkt. 33).  Defendants filed a reply in further support of their cross-motion on January 17, 2022.  (Dkt. 34).

- 4 -

## DISCUSSION

### I.   Standard on Motion for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The Court should grant summary judgment if, after considering the evidence in the light most favorable to the nonmoving party, the Court finds that no rational jury could find in favor of that party.  *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

"The moving party bears the burden of showing the absence of a genuine dispute as to any material fact. . . ."  *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 486 (2d Cir. 2014).  "Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial."  *Johnson v. Xerox Corp.*, 838 F. Supp. 2d 99, 103 (W.D.N.Y. 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).  Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation."  *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (quoting *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011)).  Specifically, the non-moving party "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact."  *Brown*, 654

F.3d at 358.   Indeed, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).   "Moreover, even when both parties move for summary judgment, asserting the absence of any genuine issues of material fact, a court need not enter judgment for either party.   Rather, each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." *Morales v. Quintel Ent., Inc.*, 249 F.3d 115, 121 (2d Cir. 2001).

## II.   <u>Cause of Action for Violation of Section 253</u>

The parties' dispute regarding the viability of Plaintiff's Section 253 claim largely mirrors the dispute in the Cellco Case.   However, in the Cellco Case, the City did not argue "that Congress took any action to limit the Court's ability to grant equitable relief related to violations of Section 253." Cellco Decision at 10.   Defendants have made that argument in this case. (*See* Dkt. 34 at 1-3).   Accordingly, the Court must analyze this contention.

The Supreme Court explained in *Armstrong v. Exceptional Child Ctr., Inc*., 575 U.S. 320 (2015), that a federal court has the inherent authority to "grant injunctive relief against state officers who are violating, or planning to violate, federal law," unless prohibited from doing so by statute.  *Id*. at 326-27, 329.   Such prohibition may be either express or implied. *Id*. at 327.

Defendants argue that Section 253 implicitly prohibits the Court from granting injunctive relief because it "includes an express administrative remedy at subsection (d) in

the event that State or local action prohibits or has the effect of prohibiting the provision of telecommunications service" and because it contains "broad and unspecific language" that is not "judicially administrable." (Dkt. 34 at 2-3). The Court is unpersuaded by this argument.

First, in *Friends of the E. Hampton Airport, Inc. v. Town of E. Hampton*, 841 F.3d 133 (2d Cir. 2016), the Second Circuit held that the inclusion of an administrative remedy in a statute "does not imply [Congress's] intent to bar . . . parties from invoking federal jurisdiction where, as here, they do so not to enforce the federal law themselves, but to preclude a municipal entity from subjecting them to local laws enacted in violation of federal requirements." *Id*. at 146; *see also Virgin Mobile USA, L.P. v. Pat Apple*, No. 17-CV-2524-JAR-JPO, 2018 WL 2926576, at *5 (D. Kan. June 7, 2018) ("The lack of a sole remedy in the FCA renders discussion on whether §§ 254(f) and 253(a)'s mandates are judicially unadministrable moot because both *Armstrong* factors are necessary to conclude that Congress intended to preclude private enforcement in the courts. Without the presence of the first *Armstrong* factor, the Court cannot find that Congress intended to preclude private enforcement of the FCA as Defendants suggest.").

Second, "unlike the Medicaid claim at issue in *Armstrong*, Plaintiff's TCA-based challenge to the [Telecom Code] would not require application of a judicially unadministrable standard." *CNSP, Inc. v. Webber*, No. CV 17-0355 KG/SCY, 2020 WL 2745456, at *7 (D.N.M. May 27, 2020) (rejecting implicit prohibition argument and explaining that "[t]he TCA. . . sets forth a simple rule" and "several courts have already considered similar preemption claims by telecommunications providers under § 253").

Accordingly, there is simply no basis for the Court to find that it has been implicitly prohibited from enjoining violations of Section 253. Defendants have cited no cases in which a court has found to the contrary.

The remainder of the parties' arguments about the cognizability of Plaintiff's Section 253 claim are resolved by the Cellco Decision.

## III.   Cause of Action for Violation of Section 332

Plaintiff has asserted two claims under Section 332. More specifically, Plaintiff alleges two violations of Section 332(c)(7)(B)(i). Defendants argue that Plaintiff cannot maintain these causes of action because "a precondition to bring a claim under [Section] 332 is that the City have made a decision concerning the 'placement, construction, and modification of personal wireless services facilities.'" (Dkt. 30-8 at 6 (quoting 47 U.S.C. § 332(c)(7)(A)). Plaintiff contends that this argument is foreclosed by the Small Cell Order. (*See* Dkt. 33 at 11).

The Court agrees with Plaintiff. In the Small Cell Order, the FCC rejected the argument that "Section 332(c)(7)(B)(i)(II) is limited exclusively to decisions on individual requests and therefore must be interpreted differently than Section 253(a)." 33 F.C.C. Rcd. at 9123 n. 206. The FCC further concluded that Section 332 and Section 253 "have the same meaning and . . . reflect the same standard, <u>including with respect to preemption of fees that could 'prohibit' or have 'the effect of prohibiting' the provision of covered service</u>." *Id*. at 9124 (emphasis added). For reasons discussed at length in the Cellco Decision, the Court has determined that the Small Cell Order was a reasonable interpretation of the relevant statutes by the FCC and that it is accordingly entitled to

deference.  The Court accordingly finds that Plaintiff can pursue its challenge to the City's fees under both Section 253 and Section 332.

## IV.  **Genuine Issues of Material Fact Exist Regarding the Reasonableness of the City's Fees**

Plaintiff seeks summary judgment that the fees set forth in the Telecom Code are excessive and accordingly violate Sections 253(a) and 332(c)(7)(B)(i)(II).  (Dkt. 26-1 at 17).  However, the Court has already concluded for reasons discussed at length in the Cellco Decision that genuine issues of material fact exist regarding whether the City's fees are reasonably based on its costs, as required by the Small Cell Order.  The arguments proffered by Plaintiff do not change this conclusion.  While Plaintiff devotes much of its motion to attacking the manner in which the City claims to have estimated its costs, that kind of factual dispute is not amenable to resolution on a motion for summary judgment. *See, e.g., Curry v. City of Syracuse*, 316 F.3d 324, 333 (2d Cir. 2003) ("[I]t is well established that '[c]redibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment.'" (quoting *Fischl v. Armitage*, 128 F.3d 50, 55-56 (2d Cir. 1997))).  This is particularly true because the City is required only to show that the fees at issue are a reasonable estimate of its actual costs.  Reasonableness is not the sort of determination that is generally amenable to resolution as a matter of law. *Cf. Matzkow v. United New York Sandy Hook Pilots Ass'n*, No. 18-CV-2200 (RER), 2022 WL 79725, at *11 (E.D.N.Y. Jan. 7, 2022) ("[C]ourts are generally reluctant to grant summary judgment in negligence

cases because the assessment of reasonableness is generally a question of fact in all but the most extreme cases.").

Plaintiff does make a handful of arguments not addressed in the Cellco Decision, which the Court has considered.   First, Plaintiff contends that "a straightforward aggregation analysis demonstrates that the City's fiber fees are more than double those that other courts have found violate federal law," because if the per-foot-fee charged by the City "were applied to all 80,000 route-miles of fiber owned by Crown Castle . . .  the total annual fee burden would exceed $219 million," which is "roughly twelve percent of Crown Castle's publicly reported revenue attributable to fiber in 2020."   (Dkt. 26-1 at 30). However, in both of the cases relied upon by Plaintiff—namely, *TCG New York, Inc. v. City of White Plains*, 305 F.3d 67 (2d Cir. 2002) and *Puerto Rico Tel. Co. v. Municipality of Guayanilla*, 450 F.3d 9 (1st Cir. 2006)—the courts did not simply perform an aggregation analysis.   Instead, after performing such an analysis, the *TCG New York* and *Puerto Rico Tel. Co.* courts went on to consider whether the challenged ordinances were reasonably related to the municipality's actual costs.  *See Puerto Rico Tel Co*., 450 F.3d at 22; *TCG New York*, 305 F.3d at 77-78.  In other words, in neither case did the court adopt the sort of bright-line rule that Plaintiff is urging the Court to apply in this case.

Second, Plaintiff argues that the Telecom Code violates other provisions of the Small Cell Order, because it permits the City to require in-kind or alternative payments in lieu of right-of-way use payments and because it allows the City to require regulated entities to pay consultant fees.  (Dkt. 26-1 at 31-32).  However, Plaintiff has not come forward with any evidence that these provisions of the Telecom Code have been applied to

it.  Plaintiff has asked the Court in its motion for "a declaratory judgment finding the fee structure set forth in the City's Telecommunications Code is illegal, and <u>directing disgorgement of fees, plus interest, paid by Plaintiff to the City pursuant to the fee structure</u>."  (Dkt. 26 at 1 (emphasis added)).  Plaintiff offers no explanation for how the mere presence of these provisions in the Telecom Code—even assuming they run afoul of the Small Cell Order—would entitle it to the relief it seeks.  *See Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 104 (2d Cir. 2012) (in determining whether to exercise its discretion to issue a declaratory judgment, the Court must consider, among other things, whether the judgment will serve a useful purpose in clarifying or settling the involved legal issue and whether it will finalize the controversy and offer relief from uncertainty).

Third, Plaintiff argues that "the City has tried to impose fees on Crown Castle in a manner that nearly doubles the fee burden for 2020 and violates the plain language of the contract between the parties."  (Dkt. 26-1 at 32).  However, Plaintiff has failed to explain how this purported breach of contract establishes a violation of either Section 253 or Section 332, the scope of which is not defined by the parties' agreement.  In other words, even accepting Plaintiff's assertion that the City has violated the terms of the MLA does not entitle Plaintiff to summary judgment on its claims pursuant to Sections 253 and 332, if in fact the fees charged by the City represented a reasonable approximation of its actual costs.

Finally, Plaintiff argues that the City's fees "separately violate Sections 253 and 332 because they are unlawfully discriminatory."  (Dkt. 26-1 at 33).  More particularly, Plaintiff

argues that the Telecom Code discriminatorily "imposes right-of-way use fees on wireless installations located on poles, but applies no comparable fees for wireless antennas mounted on other structures" and also "creates a tiered fee structure for linear infrastructure, imposing differing fee amounts depending on whether a provider has 1 to 2,500, 2,500 to 12,500, or more than 12,500 feet of facilities." (*Id*.).

In order to prevail on such a claim, Plaintiff must "show that [Defendants] discriminated among providers of functionally equivalent services and that the providers were treated unequally." *Nextel Partners, Inc. v. Town of Amherst, NY*, 251 F. Supp. 2d 1187, 1193 (W.D.N.Y. 2003). The cursory argument made by Plaintiff falls far short of demonstrating that a reasonable trier of fact would be compelled to reach this conclusion. In particular, Plaintiff has failed to point to any evidence regarding the functional equivalency of wireless antennas mounted on poles and wireless antennas mounted on other structures, or of varying lengths linear infrastructure. Without such a threshold showing by Plaintiff, it cannot demonstrate its entitlement to summary judgment on this basis.

For all these reasons, as well as the reasons set forth at length in the Cellco Decision, the Court finds that summary judgment in any party's favor is not warranted as to Plaintiff's claims pursuant to Sections 253 and 332.

## V.   <u>Dormant Commerce Clause and First Amendment Claims</u>

Plaintiff next seeks summary judgment on its claim that the Telecom Code violates the dormant Commerce Clause because it "prohibits entities subject to its fees from billing

or otherwise separately charging, identifying or designating those fees on any bills or invoices to any customers or users of services or commodities furnished by the licensee." (Dkt. 1 at ¶ 113 (quotations and alterations omitted)).  Plaintiff refers to this provision of the Telecom Code as the "pass-through prohibition." (*Id*.).  Plaintiff further seeks summary judgment on its claim that the pass-through prohibition violates the First Amendment.  As to both of these claims, Plaintiff seeks a declaratory judgment.  (Dkt. 26 at 2).

The Court is not persuaded that it should reach the merits of Plaintiff's dormant Commerce Clause and First Amendment claims at this time.  "The Declaratory Judgment Act provides that, 'in a case of actual controversy within its jurisdiction any court of the United States may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.'" *MedImmune, Inc. v. Genentech, Inc*., 549 U.S. 118, 126 (2007)  (alterations omitted and quoting 28 U.S.C. § 2201(a)).  "Courts have consistently interpreted the permissive language of the Declaratory Judgment Act as a broad grant of discretion to district courts to refuse to exercise jurisdiction over a declaratory action that they would otherwise be empowered to hear." *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist*., 673 F.3d 84, 104 (2d Cir. 2012) (citation and alterations omitted).  The Second Circuit has identified five factors that a district court should consider in determining whether to exercise its discretion: (1) whether the declaratory judgment will serve a useful purpose in clarifying or settling the involved legal issues; (2) whether a declaratory judgment would finalize the controversy and offer relief from uncertainty; (3) whether the proposed remedy is being used for "procedural fencing" or a "race to res judicata";  (4) whether the use of a

declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court; and (5) whether there is a better or more effective remedy. *Id.* (citation omitted).

Here, assuming *arguendo* that the pass-through prohibition does, as Plaintiff contends, violate the dormant Commerce Clause and the First Amendment, the Court finds that it is severable from the remainder of the Telecom Code. "Severability is a question of state law[.]" *Concerned Home Care Providers, Inc.* v. *Cuomo*, 783 F.3d 77, 88 (2d Cir. 2015). "The question is in every case whether the legislature, if partial invalidity had been foreseen, would have wished the statute to be enforced with the valid part exscinded, or rejected altogether." *Nat'l Advert. Co.* v. *Town of Niagara*, 942 F.2d 145, 148 (2d Cir. 1991) (citation omitted). New York recognizes a preference for severance, which is "particularly strong when the law contains a severability clause." *Id.* However, the presence of such a clause is not dispositive, and the preference for severability may be overcome if "the valid and invalid provisions are so intertwined that excision of the invalid provisions would leave a regulatory scheme that the legislature never intended." *Id.* (citation omitted).

The Telecom Code contains a severability clause. (*See* Dkt. 26-5 at 39 ("If any provision of this chapter is declared invalid or unconstitutional for any reason, the remaining provisions shall be severable and continue in full force and effect.")). Plaintiff's arguments that the strong preference for severability have been overcome in this case are wholly unpersuasive. Plaintiff speculates based on "the magnitude of the fees" and a single, ambiguous public statement made by the City that the City would not have enacted

the Telecom Code in the absence of pass-through prohibition.  (Dkt. 26-1 at 37-38).  This is a far cry from the factual circumstances that courts have found sufficient to disregard a severability clause.  *See, e.g., Healthcare Distribution Alliance v. Zucker*, 353 F. Supp. 3d 235, 264 (S.D.N.Y. 2018) (finding no severability where "[t]he legislative history of the [the statute at issue] evinces a clear assessment by the legislature as to where it expected this money to come from, and New York does not so much as hint that it ever considered other sources than the Licensees"), *vacated in part on other grounds sub. nom., Ass'n for Accessible Medicines v. James*, 974 F.3d 216 (2d Cir. 2020).

Further, the public statement that Plaintiff points to—that it would be "unconscionable" to require City taxpayers to bear the costs of small cell deployment— actually supports a finding of severability.  It is the City's position that the fees charged in the Telecom Code represent a reasonable approximation of its actual costs.  Accordingly, invalidation of the Telecom Code as a whole would, in the City's view, revert such costs to the City and its taxpayers.  (*See* Dkt. 12 at 3 (the City contends that the Telecom Code remedies "artificially depressed costs of providing telecommunications services within the City of Rochester" which were previously "at the expense of City taxpayers")).  Leaving the Telecom Code in place without the pass-through prohibition, by contrast, preserves the possibility that Plaintiff will determine as a business matter that it either should not pass the fees along to its customers or that it should pass along only a portion thereof.  There is no reason for the Court to conclude, based on the record before it, that the City did not consider the possibility that the pass-through prohibition could be invalidated and

nevertheless determined that it was preferable to charge Plaintiff and other similarly situated fiber companies fees reflecting the City's actual costs.

Because the pass-through prohibition is severable, a finding by the Court that the pass-through prohibition is unconstitutional would not resolve the parties' dispute—it would still be necessary to conduct a trial regarding the reasonableness of the City's fees. And, if Plaintiff prevails on the merits with respect to its claim that the Telecom Code as a whole violates Sections 253 and 332, its challenges to the pass-through prohibition individually would be moot. The Court is accordingly not persuaded at this time that a declaratory judgment regarding the pass-through prohibition would serve a useful purpose in clarifying or settling the involved legal issue or that it would finalize the controversy or offer relief from uncertainty. The Court further cannot find, on the instant record, that there is not a better or more effective remedy than a declaratory judgment addressing the legality of the pass-through prohibition alone.

The Court further finds that Defendants have not demonstrated their entitlement to summary judgment on either Plaintiff's dormant Commerce Clause claim or Plaintiff's First Amendment claim. The Court considers first the dormant Commerce Cause claim. "The dormant Commerce Clause, a doctrine inferred from the Commerce Clause of the United States Constitution, *see* U.S. Const. art. I, § 8 cl. 3, is a 'restriction on permissible state regulation.'" *Entergy Nuclear Vermont Yankee, LLC v. Shumlin*, 733 F.3d 393, 429 (2d Cir. 2013) (quoting *Hughes v. Oklahoma,* 441 U.S. 322, 326 (1979)). "When a statute 'directly controls commerce occurring wholly outside the boundaries of a State,' it is

invalid under the dormant Commerce Clause because it 'exceeds the inherent limits of the enacting State's authority.'" *Id.* (quoting *Healy v. Beer Inst.,* 491 U.S. 324, 336 (1989)).

Further, "[i]n analyzing a challenged local law under the dormant Commerce Clause" that does not directly control extraterritorial commerce, the Court "first determine[s] whether it clearly discriminates against interstate commerce in favor of intrastate commerce, or whether it regulates evenhandedly with only incidental effects on interstate commerce." *Allco Fin. Ltd. v. Klee*, 861 F.3d 82, 102-03 (2d Cir. 2017) (citation omitted). If the local law at issue "clearly discriminates against interstate commerce in favor of intrastate commerce" it "is virtually invalid *per se* and will survive only if it is 'demonstrably justified by a valid factor unrelated to economic protectionism.'" *Id.* (citation omitted). If, on the other hand, the local law "is nondiscriminatory, but nonetheless adversely affects interstate commerce incidentally, [the Court] employ[s] a deferential balancing test" pursuant to which the law "will be sustained unless the burden imposed on interstate commerce is clearly excessive in relation to the putative local benefits." *Id.* (quotation and alterations omitted).

Defendants' argument that they are entitled to summary judgment on the dormant Commerce Clause claim is entirely unpersuasive. Specifically, Defendants contend that "[t]he Telecom Code's . . . treats plaintiff the same for both in-state and out-of-state purposes: in either case, plaintiff must pay the City's telecom fees itself, not pass them on to consumers whether in-state or out-of-state." (Dkt. 30-8 at 24-25). This argument misses the point. It is precisely because the Telecom Code purports, on its face, to govern how Plaintiff may conduct itself with respect to out-of-state consumers that the dormant

Commerce Clause is implicated.  Because Defendants have not meaningfully addressed the appropriate standard, they have not demonstrated their entitlement to summary judgment.

Similarly, Defendants' papers fall short of demonstrating their entitlement to summary judgment on Plaintiff's First Amendment claim.  Defendants' argument in this regard depends on their contention that the pass-through prohibition regulates conduct and not speech.  (*See* Dkt. 30-8 at 23-24).  However, the case that Defendants rely on for this argument, *BellSouth Telecomms., Inc. v. Farris*, 542 F.3d 499 (6th Cir. 2008), actually held to the contrary.  *See id.* at 506 ("[T]his provision regulates speech, not conduct, as it prohibits providers from 'stating' the tax on the bill." (original alteration omitted)).  The pass-through prohibition expressly forbids Plaintiff from "identifying" or "designating" the relevant fees on any bill, and therefore regulates speech in addition to regulating conduct.  Defendants' argument thus fails, and they are not entitled to summary judgment.[2]  Accordingly, the Court declines to enter summary judgment in favor of any party on Plaintiff's dormant Commerce Clause or First Amendment claims.

---

[2]      Defendants also make a one-sentence, unelaborated argument that "Insofar as § 106-15(G) of the Telecom Code may be construed as regulating speech in violation of the First Amendment, the introductory phrase of the provision—'[e]xcept as otherwise required by law'—preserves the licensee's First Amendment speech rights."  (Dkt. 30-8 at 24).  Defendants have cited no authority for the proposition that this introductory clause is sufficient to save an otherwise unconstitutional prohibition on speech and have not come close to showing that summary judgment is warranted on this basis.

## VI.    <u>Takings Clause Claim</u>

Plaintiff has asserted a claim that the fees imposed by the Telecom Code constitute a regulatory taking in violation of the Takings Clause of the Fifth Amendment, U.S. Const. Amend. V.  (*See* Dkt. 1 at ¶¶ 175-80); *see also Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1015 (1992) (explaining circumstances in which regulatory takings may occur). Plaintiff's motion papers identify this claim as one on which it sought summary judgment (*see* Dkt. 26-1 at 7), but Plaintiff offers no argument thereon.  Accordingly, Plaintiff has not demonstrated an entitlement to summary judgment as to this claim.

Defendants have sought summary judgment in their favor on this claim, contending that "plaintiff fails to identify any 'private property' that the City has 'taken for public use without just compensation[.]'"  (Dkt. 30-8 at 25).  However, in opposition to Defendants' motion, Plaintiff has explained that the private property at issue is the "extensive fiber network" it deployed in the City prior to adoption of the Telecom Code, and as to which it claims to have been denied all economically beneficial or productive use.  (Dkt. 33 at 33-34).  Defendants have not addressed this issue in their reply, and the Court cannot find, on the scant record and arguments before it, that Defendants are entitled to summary judgment on Plaintiff's Takings Clause claim.

## VII.    <u>CPLR 7803 Claims</u>

The Court turns finally to Plaintiff's claims brought under CPLR 7803—its third and fourth causes of action.  Plaintiff did not seek summary judgment on these claims. Defendants seek summary judgment thereon in their favor, arguing that CPLR 7803 "is not a proper vehicle to challenge the validity of legislation."  (Dkt. 30-8 at 24).  Plaintiff argues

in opposition that its CPLR 7803 claims "do not challenge the Code itself, but rather the conduct of City officials implementing the Code."  (Dkt. 33 at 34).

As a threshold matter, although it has not been raised by the parties, the Court notes that "it is generally inappropriate for a federal district court to exercise supplemental jurisdiction over an Article 78 claim."[3]  *Burdick v. Bath Cent. Sch. Dist.*, No. 6:19-CV-06426 EAW, 2020 WL 1435112, at *8 (W.D.N.Y. Mar. 24, 2020); *see also Maniscalco v. New York City Dep't of Educ.*, 563 F. Supp. 3d 33, 42 (E.D.N.Y. 2021) ("Federal courts have routinely declined to exercise supplemental jurisdiction over Article 78 claims pursuant to 28 U.S.C. § 1367(c), citing the special solicitude afforded to this purely state procedural remedy." (quotation omitted)), *aff'd,* No. 21-2343, 2021 WL 4814767 (2d Cir. Oct. 15, 2021), *cert. denied,* 142 S. Ct. 1668, 212 L. Ed. 2d 578 (2022); *Bartolini v. Cassels,* No. 17-CV-5671 (NSR)(PED), 2018 WL 3023161, at *6 (S.D.N.Y. June 18, 2018) ("District Courts in this Circuit have consistently declined to exercise supplemental jurisdiction over Article 78 claims.") (collecting cases), *aff'd*, 801 F. App'x 10 (2d Cir. 2020); *Nitti v. Cnty. of Tioga*, No. 3:14-CV-0954 (GTS/DEP), 2015 WL 5708637, at *9 (N.D.N.Y. Sept. 28, 2015) ("Courts have found that compelling reasons to decline to exercise supplemental jurisdiction exist in the very nature of an Article 78 proceeding." (quotations and alteration omitted)); *E. End Eruv Ass'n, Inc. v. Town of Southampton*, No. CV 13-4810(AKT), 2014 WL 4826226, at *18 (E.D.N.Y. Sept. 24, 2014) ("The Court agrees with the essentially unanimous position of the New York federal district courts that

---

[3]     CPLR 7803 is within Article 78 of the CPLR.

the very nature of an Article 78 proceeding presents . . . compelling reasons" to decline exercising supplemental jurisdiction over a plaintiff's Article 78 claim (internal quotation and citations omitted)).  Indeed, it is an open question whether a district court even has the authority to exercise such jurisdiction.  *See Carver v. Nassau Cnty. Interim Fin. Auth.*, 730 F.3d 150, 155 (2d Cir. 2013) ("We need not decide . . . whether Article 78 can, on its own, deprive a federal court of jurisdiction over claims brought under that provision, as some district court cases have held[.]"); *Beckwith v. Erie Cnty. Water Auth.*, 413 F. Supp. 2d 214, 226-27 (W.D.N.Y. 2006) ("[T]his court has no original or supplemental subject matter jurisdiction over [an] Article 78 proceeding as neither federal nor New York state law empower the federal courts to consider such claims, and, under New York law, authority to grant relief pursuant to an Article 78 proceeding is exclusively vested in New York Supreme Court.").

In light of these serious jurisdictional questions, the Court denies Defendants' motion for summary judgment on Plaintiff's CPLR 7803 claims without prejudice. Instead, within 30 days of entry of this Decision and Order, the parties shall submit to the Court written memoranda setting forth their respective positions on whether it is appropriate for the Court to exercise jurisdiction over Plaintiff's CPLR 7803 claims.

## CONCLUSION

For the foregoing reasons, as well as the reasons set forth in the Cellco Decision, the Court finds that neither Plaintiff nor Defendants are entitled to summary judgment.  The parties' respective motions for summary judgment (Dkt. 26; Dkt. 30) are accordingly denied.  Within 30 days of entry of this Decision and Order, the parties shall submit written

memoranda of no more than 20 pages each setting forth their positions on whether this Court can or should exercise jurisdiction over Plaintiff's CPLR 7803 claims.

      SO ORDERED.

                          ELIZABETH A. WOLFORD
                          Chief Judge
                          United States District Court

Dated:  August 22, 2022
         Rochester, New York